JOHN L. JOHNSON AND PATRICIA JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 6274-86
United States Tax Court
T.C. Memo 1989-594; 1989 Tax Ct. Memo LEXIS 601; 58 T.C.M. (CCH) 582; T.C.M. (RIA) 89594; October 31, 1989
*601 Bill Thomas Peters, for the petitioners. Paul L. Dixon, for the respondent. SHIELDS
MEMORANDUM OPINION SHIELDS, Judge: On August 31, 1989, petitioners lodged with the Clerk a document entitled Rule 162 Motion To Amend, Modify or Set Aside Decision or For New or Further Trial which was filed as a Motion for Reconsideration under Rule 161 of our opinion dated July 31, 1989, T.C. Memo. 1989-394. Petitioners contend that their motion to reconsider should be granted because (1) in our opinion we failed to consider events that occurred subsequent to the donation of their mineral claims in arriving at a value for the claims on the date of their donation, (2) we misinterpreted a statement by petitioners' witness and as a result incorrectly concluded that the witness was biased, and (3) we erroneously rejected petitioners' showing of a "speculative value" for unproven mineral reserves. With regard to petitioners' first contention, it is true as reflected by the record before us that the number of claims as well as general mining activity did increase in the vicinity of the five donated claims in years subsequent to their donation. The record, however, *602 fails to disclose any basis for concluding that at the date of the donation such increase would have been within the reasonable knowledge of the proverbial willing buyer and willing seller as required by the applicable standard. Section 1.170A-1(c)(2), Income Tax Regs. In fact, from the record it appears that the increase in such activity was due, at least in substantial part, to the increase in the price of gold, which nearly quadrupled in the 13 months following the donation. Foreseeing such an escalation in price at the date of the donation would have required an omniscient willing buyer and seller, while theirs is limited by the standard to reasonable knowledge. Consequently, we find no merit in petitioners' first contention. Petitioners next contend that we misinterpreted a statement by Victor Sorbe, a former owner of a one-half interest in three of the donated claims, and as a result erroneously discredited Mr. Sorbe's testimony that the five donated claims had a value of over $ 100,000. At trial one of the issues was whether Mr. Sorbe still owned an interest in the donated claims at the time of the donation. Mr. Sorbe testified that at the time of the donation he no longer *603 had any interest in the claims because he had previously transferred his one-half interest in three of them to petitioners. During his testimony on this issue he made several statements regarding his lack of interest in the claims, and in our opinion we correctly interpreted these statements as references to a legal interest in the claims at their donation. However, on the question of value, Mr. Sorbe testified that in his opinion the five donated claims had a value of over $ 100,000 at the time they were donated, but we concluded that no weight could be attributed to his valuation because, among other reasons, it was inconsistent with his statement that he transferred his one-half interest in three of the claims for no stated consideration because "we decided that we probably should pull out of the area * * * and at the time I was not really that interested in those particular claims." This statement clearly indicates a lack of interest in the claims as an investment and conflicts directly with Mr. Sorbe's testimony that the properties were worth more than $ 100,000. Among the other reasons for discrediting Mr. Sorbe's valuation was the fact that at the time of trial he still *604 owned claims in the same general area of the donated claims and obviously the value of his claims would be affected by the value placed on the claims at issue. In view of the foregoing, we find no merit in petitioners' second contention. Finally, petitioners contend that we erroneously concluded that mining claims do not have any value unless they have proven mineral reserves. Petitioners misconstrue our conclusion with respect to the value of claims such as those in dispute which have no proven ore reserves since in our opinion we stated: In final analysis Dr. Miller [respondent's expert] concluded and we agree that no value can be attributed to petitioner's claims in 1978 for mineral resources known to be present on the claims. Since as stated by Dr. Miller, and generally agreed to by Dr. Bloomstein [petitioner's expert], "the value of the mineral resources of a mining claim is directly determined by the quantity and quality of ore which occurs on the claim," when as in this case there is no "proven ore a mining claim has no present cash value for its mineral resources" and "any potential future value of a claim (based on its surface indications) does not add present *605 cash value to the claim, except in the form of payments made to acquire or extend" lease purchase or option agreements. [Emphasis supplied. 57 T.C.M. 1135, 1142, 58 P-H Memo T.C. par. 89,394.] The "potential future value" of which we spoke includes any speculative value petitioner claims we disregarded because any speculative value would be represented by the "payments made to acquire or extend lease purchase or option agreements" on claims which have no proven ore reserves. By reference to payments made to concurrently acquire or extend lease purchase or option agreements on similar claims we concluded that petitioners' five claims had a value of $ 9,220. Therefore, petitioner's third contention is also without merit. To reflect the foregoing, An appropriate order will be entered.